**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **LIZ AMNERIS BELLO-MARTINEZ;**<br>**ARISTIDES COLON-PEÑA,** on their own behalf and on behalf of their minor daughter AICB<br><br>    Plaintiffs<br><br>        v.<br><br>**CARIBBEAN SCHOOL, INC. D/B/A CARIBBEAN SCHOOL**<br><br>    Defendant. | CIVIL NO. 14-1609 (PG) |

## OPINION AND ORDER

The plaintiffs appear before the Court to request a Temporary Restraining Order ("TRO") requiring Caribbean School, a private educational institution in Ponce, Puerto Rico, to allow their minor daughter (hereinafter "AICB") to attend said school for the kindergarten class of 2014-2015 school year under the same precautionary provisions and reasonable accommodations offered during the 2013-2014 school year. See Docket No. 2. The plaintiffs' claims are anchored on Title III of the American with Disabilities Act, 42 U.S.C. § 12182, *et seq.* (hereinafter, "ADA") and the Rehabilitation Act, 29 U.S.C. § 794, *et seq.* (hereinafter, "the Rehabilitation Act") as well as on some state law claims. See Docket No. 1.

It appearing from the face of the motion requesting a TRO (Docket No. 2) and the Verified Complaint (Docket No. 1) that the plaintiffs do not comply with the requisites of Rule 65(b) of the Federal Rules of Civil Procedure, the Court **DENIES** the Temporary Restraining Order sought. A TRO is an extraordinary remedy that should not be granted unless the movant proves the following elements: "(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest." See Gonzalez-Droz v. Gonzalez-Colon, 573 F.3d 75, 79 (1st Cir. 2009).

Likelihood of success on the merits has been said to be the most

important factor for a court to consider when deciding whether to issue injunctive relief, see Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1312 (Fed.Cir.2007), and it is precisely on this prong of the test that plaintiffs fall short of the mark at this stage of the proceedings.

The plaintiffs point to Title III of the ADA, 42 U.S.C. §12182(a), which states the following: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." To establish a prima facie case pursuant to this provision, a plaintiff must show:

> (1) that he has a disability as defined under the ADA; (2) that the defendant's office is a private entity that owns, leases, or operates a place of public accommodation; (3) that he requested a reasonable modification of defendant's policies or procedures to allow him access to the public accommodation; and (4) that the defendant failed to make reasonable modifications that would accommodate his disability without fundamentally altering the nature of the public accommodation.

Sanchez v. ACAA, 247 F.Supp.2d 61, 67 (D.P.R. 2003).

"[T]he sine qua non requirement for ADA protection, is whether the individual has a 'disability' as defined by the ADA." Castro-Medina v. Procter & Gamble Commercial Co., 565 F.Supp.2d 343, 358 (D.P.R. 2008) (citing Corujo-Marti v. Triple-S, Inc., 519 F.Supp.2d 201, 212 (D.P.R. 2007)). Under the ADA, a "disability" may take any of the following forms: (1) "a physical or mental impairment that substantially limits one or more major life activities;" (2) "a record of such an impairment;" or (3) "being regarded as having such an impairment." See 42 U.S.C. § 12102(1); see also Roman-Oliveras v. Puerto Rico Elec. Power Authority, 655 F.3d 43, 48 (1st Cir. 2011); see also Castro-Medina, 565 F.Supp.2d at 358.

The First Circuit follows a three-part analysis to determine whether an impairment[1] qualifies as a disability under the ADA: "(1) if

---

[1] The EEOC defines "impairment" as "[a]ny physiological disorder or condition, cosmetic

the plaintiff suffered a physical or mental impairment; (2) if the 'life activity' limited by the impairment qualify as 'major'; and (3) if the impairment, in fact, substantially limits the plaintiff's identified major life activity." Castro-Medina, 565 F.Supp.2d at 358 (citing Carroll v. Xerox Corp., 294 F.3d 231, 238 (1st Cir. 2005)). Moreover, "[t]he burden is on the plaintiff to establish these three elements." Castro-Medina, 565 F.Supp.2d at 358 (citing Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 20 (1st Cir. 2004)).

Major life activities are "basic activities of daily life that an average person in the general population can perform with little or no difficulty." 29 C.F.R. § 1630.2(i). These include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Ramos-Echevarria v. Pichis, Inc., 659 F.3d 182, 187 (1st Cir. 2011).

Similarly, Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ... ." 29 U.S.C. § 794(a). "The prima facie case under the Act mirrors that under the ADA, with only one relevant exception: Under the Rehabilitation Act, Plaintiff must show that he was excluded solely by reason of his disability." Dunning v. War Memorial Hosp. 534 Fed.Appx. 326, 333 (6th Cir. 2013). Hence, a Section 504 claimant must show that he or she "(1) was dismissed from a program which receives federal funds, (2) was disabled, (3) but nonetheless was otherwise qualified, and (4) was dismissed solely because of his or her disability." Murphy v. Franklin Pierce Law Center, No. 95-1003, 1995 WL 325791, at *2 (1st Cir. May 31, 1995).

---

disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or any mental or physiological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." See 29 C.F.R. § 1630.2(h) (1991).

For purposes of the Rehabilitation Act, a "qualified handicapped person" is one who, "with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others ... ." 29 C.F.R. § 1613.702(f); see also Taub v. Frank, 957 F.2d 8, 10 (1st Cir. 1992). "The plaintiff bears the initial burden of establishing that he is entitled to protection under the Act." Id. (citing Pushkin v. Regents of Univ. of Colo., 658 F.2d 1372, 1385 (10th Cir.1981)).

Applying this legal framework to the particulars of this case, we find that the plaintiffs have not sufficiently pled that AICB has a disability under the ADA. In assessing whether someone is disabled according to ADA, the Court must make an individualized inquiry. See Ramos-Echevarria, 659 F.3d at 187. Although it is evident from the complaint that AICB has a medical condition, that circumstance alone is insufficient to prove a disability as defined by the statutes under which they now seek relief. "What is required is evidence showing that the impairment limits this particular plaintiff to a substantial extent." Id. We have closely scrutinized the Verified Complaint and the Motion for Temporary Restraining Order and not even such a thorough review has pinpointed the major life activities that are affected by AICB's medical condition. Courts require the plaintiff to specify the major life activity in which he claims to be substantially limited. See Ramos-Echevarria, 659 F.3d at 188.

Likewise, the Court is adrift as to the question of whether the impairment, in fact, *substantially limits* the major life activity the plaintiffs failed to identify. Simply put, the plaintiffs have introduced no evidence showing any particular way in which the minor's illness affects any specific major life activity.

Though the plaintiffs assert that AICB has both "actual" and "regarded as" disability, the Court is not convinced that Caribbean's past accommodations made at plaintiffs' request necessarily mean that the defendant regarded AICB as having a disability under the ADA. See Marlon v. Western New England College, 124 Fed.Appx. 15 (1st Cir. 2005) (holding

that evidence that defendant provided plaintiff with certain accommodations for her condition was insufficient to establish that defendant regarded her as disabled for purposes of ADA, absent showing that the defendant maintained any misperceptions about her condition).

Therefore, having failed to adequately place this Court in a position to determine that the minor suffers from a disability as defined by the ADA and the Rehabilitation, they cannot satisfy the likelihood of success on the merits inquiry and their request for a Temporary Restraining Order must be **DENIED**. The plaintiffs shall notify the defendant with a copy of this order in an expedited manner.

Moreover, the Court sets a preliminary injunction hearing for August 13th, 2014 at 10:00 a.m. in the Old San Juan courthouse.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 8th day of August, 2014.

S/ JUAN M. PÉREZ-GIMÉNEZ
JUAN M. PEREZ GIMENEZ
UNITED STATES DISTRICT JUDGE